

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George W. Cox, M.D.
State Health Officer
Austin, Texas

Dear Sir:

Opinion No. O-4736
Re: Quarantine of prostitutes in-
fected with Venereal Diseases.

Your request for opinion has been received and
carefully considered by this department. We quote from your
request as follows:

"Will you please give me a legal ruling on
the following:

"A prostitute infected with syphilis and
gonorrhea in an infectious stage is diagnosed
and quarantined in City A, County B. Would State
or county police or sheriff's departments have
the legal authority to remove said infected pros-
titute to another county or city for quarantine
and treatment purposes?

"It is being contemplated that three quaran-
tine hospitals will be established to care for
the infected prostitutes throughout the State and
the question asked about has arisen whether any
police officers would have the legal right to
remove an infected prostitute from one county to
another.

"I would appreciate an early ruling on this
matter as it pertains to our National Defense
efforts."

Article 4418d, Vernon's Annotated Texas Civil Stat-
utes, referring to the duties of the State Health officer,
reads in part as follows:

". . . He shall have the power, with the
approval of the State Board of Health, to pre-
scribe and promulgate such administrative rules

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Honorable George W. Cox, M. D., Page 2

and regulations, not inconsistent with any law of the State, as may be deemed necessary for the effective performance of the duties imposed by this or any other law upon the State Department of Health and its several officers and divisions."

Article 4419, Vernon's Annotated Texas Civil Statutes, reads as follows:

"The State Board of Health shall have general supervision and control of all matters pertaining to the health of citizens of this State, as provided herein. It shall make a study of the causes and prevention of infection of contagious diseases affecting the lives of citizens within this State and except as otherwise provided in this chapter shall have direction and control of all matters of quarantine regulations and enforcement and shall have full power and authority to prevent the entrance of such diseases from points without the State, and shall have direction and control over sanitary and quarantine measures for dealing with all diseases within the State and to suppress same and prevent their spread. The president of the board shall have charge of and superintend the administration of all matters pertaining to State quarantine." (Underscoring ours)

Article 4427, Vernon's Annotated Texas Civil Statutes, reads as follows:

"Each county health officer shall perform such duties as have been required of county physicians, with relation to caring for the prisoners in county jails and in caring for the inmates of county poor farms, hospitals, discharging duties of county quarantine and other such duties as may be lawfully required of the county physician by the commissioners court and other officers of the county, and shall discharge any additional duties which it may be proper for county authorities under the present laws to require of county physicians; and, in addition thereto, he shall discharge such duties as shall be prescribed for him under the rules, regulations and requirements of the Texas State Board of Health, or the president

thereof, and is empowered and authorized to es-
tablish, maintain and enforce quarantine within
his county. He shall also be required to aid and
assist the State Board of Health in all matters
of local quarantine, inspection, disease preven-
tion and suppression, vital and mortuary statis-
tics and general sanitation within his county;
and he shall at all times report to said State
board, in such manner and form as it shall pre-
scribe, the presence of all contagious, infectious
and dangerous epidemic diseases within his juris-
diction; and he shall make such other and further
reports in such manner and form and at such times
as said State board shall direct; touching on
such matters as may be proper for said State board
to direct; and he shall aid said State board at
all times in the enforcement of its proper rules,
regulations, requirements and ordinances, and in
the enforcement of all sanitary laws and quaran-
tine regulations within his jurisdiction."

Article 4430, Vernon's Annotated Texas Civil Stat-
utes, reads as follows:

"Each city health officer shall perform such
duties as may be required of him by general law
and city ordinances with regard to the general
health and sanitation of towns and cities, and
perform such other duties as shall be legally re-
quired of him by the mayor, governing body or the
ordinances of his city or town. He shall discharge
and perform such duties as may be prescribed for
him under the directions, rules, regulations and
requirements of the State Board of Health and the
president thereof. He shall be required to aid
and assist the State Board of Health in all mat-
ters of quarantine, vital and mortuary statistics,
inspection, disease prevention and suppression and
sanitation within his jurisdiction. He shall at
all times report to the State Board of Health, in
such manner and form as said board may prescribe,
the presence of all contagious, infectious and
dangerous epidemic diseases within his jurisdic-
tion, and shall make such other and further re-
ports in such manner and form and at such times
as said State board shall direct, touching all

such matters as may be proper for said board to direct, and he shall aid said State board at all times in the enforcement of proper rules, regulations and requirements in the enforcement of all sanitary laws, quarantine regulations and vital statistics collection, and perform such other duties as said State board shall direct."

Article 4445, Vernon's Annotated Texas Civil Statutes, reads as follows:

"Syphilis, gonorrhea and chancroid, hereinafter designated venereal diseases, are hereby declared to be contagious, infectious, communicable, and dangerous to the public health:

"Sec. 1. Any physician or other person who makes a diagnosis in, or treats, a case of syphilis, gonorrhea or chancroid, and every superintendent or manager of a hospital, dispensary, or charitable or penal institution, in which there is a case of venereal disease, shall report such case immediately, in writing, to the local health officer, stating the name and address or the office number, age, sex, color, and occupation of the diseased person, and the date of the onset of the disease, and the probable source of infection, provided that the name and address of the diseased person need not be stated, except as hereinafter specifically required in Section 5, and provided, further, that all information and reports concerning persons having venereal disease shall be held secret in accordance with provisions in Section 8. The report shall be enclosed in a sealed envelope and sent to the local health officer who shall report weekly on the prescribed form to the State Board of Health, all cases reported to him. The physicians and others residing in cities having no city health officer, shall make reports required in this section direct to the county health officer, where there is a county health officer in the county in which they reside, and where there is no county health officer, all such reports shall be made direct to the State Board of Health.

Honorable George W. Cox, M. D., Page 5

"Sec. 2. It shall be the duty of every physician and of every other person who examines or treats a person having syphilis, gonorrhea or chancroid, to instruct him in measures for preventing the spread of such disease, and of the necessity for treatment until cured, and to hand him a copy of the circular of information obtainable for this purpose from the State Board of Health.

"Sec. 3. All city, county, or other health officers shall use every available means to ascertain the existence of, and to investigate all cases of syphilis, gonorrhea, and chancroid within their several territorial jurisdictions, and to ascertain the sources of such infections. Local health officers are hereby empowered and directed to make such examinations of persons reasonably suspected of having syphilis, gonorrhea or chancroid as may be necessary for carrying out the provisions of this law. Owing to the prevalence of such diseases among prostitutes and persons associated with them, all such persons are to be considered within the above class.

"Sec. 4. Upon receipt of a report of a case of venereal disease, the local health officer shall institute measures for protection of other persons from infection by such venereally diseased person:

"1. Local health officers are authorized and directed to quarantine persons who have, or are reasonably suspected of having syphilis, gonorrhea, or chancroid, whenever, in the opinion of said local officer, or the State Board of Health, or its executive officer, quarantine is necessary for the protection of the public health. In establishing quarantine the local health officer shall designate and define the limits of the area in which the person known to have, or reasonably suspected of having syphilis, gonorrhea, or chancroid, and his immediate attendant, are to be quarantined, and no other person other than the attending physician, shall enter or leave the area of quarantine without the permission of the local health officer.

Honorable George W. Cox, M. D., Page 6

"No one but the local health officer shall terminate said quarantine, and this shall not be done until the quarantined person has become non-infectious, as determined by the local health officer or his authorized deputy through clinical examination and all necessary laboratory tests, or until permission has been given him to do so by the State Board of Health or its executive officer.

"2. The local health officer shall inform all persons who are about to be released from quarantine for venereal disease, in case they are not cured, what further treatment should be taken to complete their cure. Any person not cured, before released from quarantine, shall be required to sign the following statement after the blank spaces have been filled to the satisfaction of the health officer:

"'I _____ residing at _____ hereby acknowledge the fact that I am at this time infected with _____; and agree to place myself under the medical care of _____, (name of physician or clinic) _____ (address) within _____ hours, and that I will remain under the treatment of said physician or clinic until released by the health officer of _____ or until my case is transferred, with the approval of said health officer, to another regular licensed physician or an approved clinic.

"'I hereby agree to report to the health officer within four days after beginning treatment as above agreed, and will bring with me a statement from the above physician or clinic of the medical treatment applied in my case, and thereafter will report as often as may be demanded of me by the health officer.

"'I agree further, that I will take all precautions recommended by the health officer to prevent the spread of the above disease to other persons and that I will not perform any act which will expose other persons to the above disease.

"'I agree, until finally released by the health officer, to notify him of any change of address and to obtain his consent before moving my abode outside of his jurisdiction.

_____

Signature.

_____

Date

"All such agreements shall be filed with the health officer and kept inaccessible to the public.

"The commissioners courts of the various counties and the governing body of all incorporated towns and cities are hereby empowered and directed to provide suitable places for the detention of persons who may be subject to quarantine and who should be segregated for the execution of the provisions of this law; and such commissioners courts and governing bodies of incorporated cities and towns are hereby authorized to incur, on behalf of their said counties, cities or towns, the expenses necessary to the enforcement of this law.

"Sec. 5. 1. When a person applies to a physician or other person for the diagnosis or treatment of syphilis, gonorrhea or chancroid, it shall be the duty of the physician or person so consulted to inquire of, and ascertain from, the person seeking such diagnosis or treatment, whether such person has heretofore consulted with, or has been treated by, any other physician or person, and if so, to ascertain the name and address of the physician or person last consulted. It shall be the duty of the physician or other person whom the applicant consults to notify the physician or other person last consulted of the change of advisers. Should the physician or person previously consulted fail to receive such notice within ten days after the last date upon which the patient was instructed by him to appear, it shall be the duty of such physician or person to report to the local health officer the name and address of such venereally diseased person.

"2. If an attending physician or other person knows or has good reasons to suspect that a person having syphilis, gonorrhea, or chancroid is so conducting himself or herself as to expose other persons to infection, or is about so to conduct himself or herself, he shall notify the local health officer of the name and address of the diseased person and the essential facts in the case.

"Sec. 6. All local and State health officers are directed to co-operate with proper officials whose duty it is to enforce laws directed against prostitution, and otherwise to use every proper means for the repression of prostitution.

"Sec. 7. Physicians, health officers, and all other persons are prohibited from issuing certificates of freedom from venereal disease, provided this section shall not prevent the issuance of statements of freedom from infectious diseases written in such form, or given under such safeguards, that their use for solicitation for sexual intercourse would be impossible.

"Sec. 8. All information and reports concerning persons infected with venereal diseases shall be inaccessible to the public except in so far as publicity may attend the performance of the duties imposed by the laws of the State.

"Sec. 9. Any health officer or other physician who shall wilfully fail to perform the duties required of him in this article shall, in addition to the fines imposed by law, forfeit his right and license to practice medicine within this State; and the district courts of the State shall have jurisdiction of suits for the forfeiture of such license in such cases, and the suit may be filed by any citizen of the State in a court having jurisdiction, under the ordinary rules of venue, and it shall be the duty of the county and district attorneys to represent the petitioners in such suit."

Article 4451, Vernon's Annotated Texas Civil Statutes, reads as follows:

"Whenever quarantine is declared by the Governor or by any county or corporate authorities in

the State, such authorities shall establish a
quarantine station or stations where any person
may be detained for such length of time as, in
the discretion of the quarantine officers, the
public safety may demand; provided, that all coun-
ty and municipal quarantine shall be subordinate,
subject to and regulated by such rules and regula-
tions as may be prescribed by the Governor of
Texas State Board of Health."

Section C of Rule 5 of the Sanitary Code, (Arti-
cle 4777, Vernon's Annotated Texas Civil Statutes), relating
to the quarantine of certain named contagious diseases (not
including the venereal diseases) provides, among other things,
that if in the opinion of the local health authority the pa-
tient can not be treated, with reasonable safety to the pub-
lic, at home, said patient may be removed to a contagious
disease hospital or pest house.

21 Texas Jurisprudence, pages 514 and 515, reads
in part as follows:

"Quarantine.--Under the police power the
legislature may authorize the establishment of
quarantine regulations for the protection of the
public against contagion from those persons whose
condition is such as to spread disease, and as
incident thereto may authorize the arrest and de-
tention of such persons.  . . .

"When the statute permits, a health officer
may issue a warrant by virtue of which a lawful
arrest may be made without affording a preliminary
hearing to the person affected.  The person de-
tained may challenge the right to continue the de-
tention by having its legality inquired into in a
habeas corpus proceeding.

"Since the legislature may declare that pros-
titution is a source of communicable diseases and
that its suppression is a public health measure,
and may direct that reasonable steps be taken to
suppress it in the manner and with the latitude
necessarily accorded to the enforcement of sanitary
and health statutes, it may validly direct that per-
sons showing upon examination that they are affect-
ed with a venereal disease may be placed in quaran-
tine."

Honorable George W. Cox, M. D., Page 10

25 American Jurisprudence, page 312, reads in part as follows:

"For Venereal Disease.--The right of the public authorities to provide for the quarantine and treatment of persons infected with a contagious or communicable venereal disease has been upheld as a health measure. Provisions for the detention and physical examination of suspects have also been upheld. The exercise of such power by local authorities is dependent upon due delegation of legislative authority for such purpose and upon the existence of reasonable grounds for suspicion. It has also been held that such power of examination cannot be exercised without an accuser."

In the case of In Re McGee, 105 Kan. 574, 185 P. 14, 8 A.L.R. 831, the Court held that certain rules of the State Board of Health of Kansas, adopted and published pursuant to the statute, and provisions of a city ordinance framed in accordance with the rules of the State Board of Health were not unreasonable because they authorized the isolation and treatment of men infected with venereal disease at an institution provided by the state for isolation and treatment of such diseases.

It would seem that the power to quarantine would also give the power to examine and treat infected persons. See Rock vs. Carney, 216 Mich. 280, 22 A.L.R.1179. However, in this case, a damage suit brought against a health officer by a person detained by such officer, the Court held that it was a question for the jury to determine whether the refusal of the right of quarantine of the patient in her own home and her confinement in the hospital were unreasonable acts not warranted by a menace to the public health.

We quote from the case of Ex Parte Hardcastle, 208 S. W. 531 (Texas Court of Criminal Appeals), as follows:

"This is a habeas corpus proceeding in which the relator is held under an order of the city health officer of San Antonio, by virtue of quarantine regulations established in accord with chapter 85 of the Acts of the Fourth Called Session of the Thirty-Fifth Legislature under a

statement of the order of arrest that, according
to the information of the health officer, relator
is affected with gonorrhea.

".  .  .

"The Legislature, under the police power,
has authority to authorize the establishment of
quarantine regulations for the protection of the
public against contagion from those persons whose
condition is such as to spread disease, and, in-
cident thereto, to authorize the arrest and deten-
tion of such persons; and such, we understand, is
the purpose of the statute in question.  Under its
terms, the proper health officer may issue a war-
rant by virtue of which a lawful arrest may be
made without preliminary thereto affording the
person affected a hearing; but if, after arrest,
such person challenges the right of the authori-
ties to continue the detention, the fundamental
law accords him the right to have the legality of
his detention inquired into by a proper court in
a habeas corpus proceeding.  The law denies to no
one restrained of his liberty without a hearing
the right to prove in some tribunal that the facts
justifying his restraint do not exist.  Ruling
Case Law, vol. 6, p. 435, § 449.  The health au-
thorities causing the arrest of relator derive
their power to do so from the alleged existence
of the fact that the relator is affected with the
disease mentioned, and that her detention is re-
quired in the public interest to prevent contagion.
If those facts do not exist, the officer has no
jurisdiction to continue the restraint and the
court in the habeas corpus proceeding has author-
ity to inquire whether the facts essential to ju-
risdiction exist.  Ex parte Degener, 30 Tex. App.
566, 17 S. W. 1111.

".  .  .

".  .  .but the power to establish quarantine,
as existent under our Constitution, is an incident
of the police power vested in the Legislature un-
der the general power to pass laws.  Our statute
does not declare that the initial order of arrest

Honorable George W. Cox, M. D., Page 12

shall be conclusive; nor does it designate any tribunal to whom one detained under an order of arrest issued by the health officer may appeal for a hearing. The fair and reasonable interpretation of the statute under which relator is held, we think, is that which accords the health officer the power to order the arrest and detention, leaving to the person detained the right to invoke the decision of the established judicial tribunals of the state on questions raised, either of fact or law, involving the validity of the detention.

"We conclude that under the act of the Legislature in question the relator had the right to a hearing on writ of habeas corpus, and therein to prove the nonexistence of the facts necessary to authorize her continued detention and thereby obtain release. Facts essential to determine whether she should or should not be held not being available in this court, it is ordered that the writ of habeas corpus prayed for be granted, and that it be referred for hearing to Hon. R. B. Minor, Judge of the Fifty-Seventh judicial district of Texas."

We quote from the case of Ex Parte Brooks, 212 S. W. 956, (Texas Court of Criminal Appeals) as follows:

"This is an original application for writ of habeas corpus sued out by the relator, Grace Brooks, who is detained by Searcy Baker, chief of police at Houston, by reason of an order issued by John M. Holt, U. S. P. H. S., director of sanitation, and chief health officer of said city of Houston, which order directs that the relator be confined at the city farm until discharged by said health officer. A copy of said order is attached to the application, and it is substantially stated therein that relator has been examined and is infected with syphilis, and is ordered into quarantine at the said municipal farm, there to be detained until released by order of said health officer.

". . .

"The fourth contention is that there have been numerous tests given relator since her confinement,

and that some of the same showed positive and some negative results. Nothing is thus presented for our decision. If relator is free from syphilis or gonorrhea she may present her application for writ of habeas corpus to the local courts under the authority of ex parte Hardcastle, decided by us at this term, and if free therefrom may be discharged. The courts will understand that the health officers have no right or power to hold in quarantine citizens who do not show the presence of some of the diseases named in chapter 85 of the Acts of the Fourth Called Session of the Thirty-Fifth Legislature.

". . .

"We have carefully examined all of the contentions of the relator, and hold them without merit. The Legislature has power to declare that prostitution is a source of communicable diseases, and that its suppression is a public health measure, and to direct, by enactment, that reasonable steps be taken, in the manner, and with the latitude necessarily accorded to the enforcement of sanitary and health statutes, to suppress same. The discovery in patients of the diseases at which the provisions of chapter 85, supra, are directed is confided to the medical profession, and the care and treatment thereof is of necessity in the hands of the members of the same noble fraternity. There is nothing in the act which prevents or forbids any suspect, or persons detained, from perfect freedom of treatment by any reputable physician while in the custody of the officials charged with the enforcement of the law; and nothing which deprives any persons so confined for treatment of a speedy hearing at the hands of the court if there be oppression or detention without a cause. The object of the law is not punishment for the unfortunates who are afflicted with these maladies, so easily transmitted and so fearful in results, but the well-being of these and the remainder of the people.

"In the instant case relator is shown to be a married woman, with a hard-working husband and

four children, the youngest being 18 months old, but the record discloses that she declines to live with them, stating that she prefers the life of the streets. She is shown to be a common prostitute and a street walker, unwilling to stay at home and preferring to live by the profligate use of her body. Testimony was adduced showing numerous bestowals of carnal favors upon soldiers and other persons, also that relator was afflicted with gonorrhea and syphilis. We think the provision of said act that such patients should be confined for treatment until declared cured by official pronouncement is not unreasonable, unjust, or arbitrary. Our attention is not called to any authorities holding this or other similar acts violative of any of the provisions of our Constitution, or discriminatory, arbitrary, or unreasonable.

"The writ is dismissed and relator remanded to the custody of the chief of police of the city of Houston, subject to the orders of the city health officer of said city." (Underscoring ours)

The tendency of judicial and public opinion to translate the maxim, salus populi suprema lex; the public health is the highest law; and whenever a police regulation is reasonably demonstrated to be a promoter of public health, all constitutionally guaranteed rights must give way, to be sacrificed, without compensation to the owner. See Tiedeman, State and Federal Control of Persons and Property, § 169.

You have informed us that the Federal Government is contemplating a health project whereby the Federal Government will place at the disposal of the Texas State Board of Health three quarantine stations and/or hospitals for the purpose of detaining and treating prostitutes infected with venereal diseases. These proposed quarantine stations and/or hospitals were former C C C camps located in the State of Texas. We understand further that the Federal Government is to pay all expenses of maintaining the hospitals and/or quarantine stations as well as all expenses of transporting infected prostitutes to said quarantine stations and/or hospitals.

The State Board of Health has broad rule making power with respect to public health matters. We think the

State Board of Health has authority to make rules, regulations and orders providing for the establishment of these quarantine stations and/or hospitals; providing for the arrest and examination of infected prostitutes upon orders of the local health authorities as well as state health authorities; providing for the issuance of orders of commitment by the various health authorities committing infected prostitutes to said quarantine stations and/or hospitals for detention and treatment; providing authority for peace officers to make arrests and execute orders lawfully issued by the various health officers; and providing in general all reasonable and necessary rules and regulations which the State Board of Health deems necessary and advisable to carry out the desired purposes of dealing with the suppression of venereal diseases.

It is therefore our opinion that your question should be answered in the affirmative, if such officers were authorized to take such action by proper rules and regulations of the State Board of Health and such officers were furnished with proper warrants and/or written orders issued by the proper health authorities under proper rules and regulations promulgated by the State Board of Health.

The reasonableness and legality of the various orders detaining persons at said hospitals will be determined by the particular facts in each case and may be inquired into by habeas corpus. (See Ex Parte Brooks and Ex Parte Hardcastle, supra.)

Yours very truly

ATTORNEY GENERAL OF TEXAS

By                Wm. J. Fanning

Wm. J. Fanning
Assistant

WJF:mp

APPROVED AUG 7, 1942

Gerald C. Mann

ATTORNEY GENERAL OF TEXAS